**Dean CHACKER**

v.

**George PETSOCK, et al.**

**Civ. A. No. 87–3174.**

United States District Court,
E.D. Pennsylvania.

April 14, 1989.

Dean Chacker, Pittsburgh, Pa., pro se.

James Stark, Asst. Dist. Atty., Norristown, Pa., for defendants.

## MEMORANDUM

RAYMOND J. BRODERICK, District Judge.

In this *pro se* petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2254, petitioner Dean Chacker, who is currently incarcerated at the State Correctional Institution at Pittsburgh, Pennsylvania, alleges the following claims: (1) his guilty plea was not knowingly and voluntarily entered due to the state court's failure to fully explain to him: (a) the elements of the crimes to which he was pleading guilty, (b) the Commonwealth's burden of proof, (c) petitioner's right to a trial by jury, and (d) the "presumption of innocence;" (2) his counsel advised him to enter a plea of guilty and indicated that petitioner would likely be sentenced to a maximum of 10–20 years imprisonment were he to so plead; (3) he was denied due process because the trial court failed to consider his mental condition at the time of sentencing or provide him with an opportunity to produce witnesses; (4) his sentence was deferred pending completion of a psychiatric evaluation at a state mental hospital; (5) the sentence imposed was excessive; (6) his plea counsel was ineffective for: (a) failing to object, at the plea hearing and on appeal, to the allegedly deficient plea colloquy engaged in by the plea judge, and (b) for both failing to advise petitioner of his right to challenge the validity of his guilty plea and failing to preserve that issue on appeal; and (7) his appellate counsel was ineffective for: (a) failing to raise the alleged ineffectiveness of plea counsel, and (b) because a conflict of interest existed between him and petitioner's plea counsel.

## I. *Procedural History*

On October 15, 1973, in Upper Moreland Township, a seven year old girl was taken from her bedroom and raped. One month later, on November 19, 1973, petitioner was arrested after Upper Moreland police observed him prowling at a private residence. Subsequent to the arrest, petitioner confessed to both a series of prowling incidents and burglaries that had previously occurred as well as to raping the seven year old victim.

On April 4, 1974, petitioner entered a negotiated plea of guilty before the Honorable Joseph H. Stanziani of the Court of Common Pleas of Montgomery County on one count of rape, four counts of burglary, four counts of theft of movable property, and four counts of loitering and prowling at nighttime. After accepting petitioner's plea, Judge Stanziani deferred imposition of sentence and ordered petitioner to Norristown State Hospital for psychiatric evaluation. On March 24, 1975, following completion of petitioner's psychiatric evaluation by the staff at Norristown State Hospital, the late President Judge A. Benjamin Scirica found petitioner to be mentally ill and, pursuant to Section 410 of the Mental Health and Mental Retardation Act, committed him to Fairview State Hospital to await sentencing.

On April 17, 1975, Judge Stanziani committed petitioner, in lieu of sentence, to

Fairview State Hospital for a period of 56 to 112 years. The sentence was revised on April 30, 1975 to a period of 55 and ½ years to 111 years. On February 25, 1977, following a hearing at which both petitioner's medical reports and two pre-sentence investigation reports were considered, Judge Stanziani concluded that petitioner had received the maximum benefit from his treatment at Fairview. Accordingly, petitioner was committed to serve the remainder of his term of imprisonment, with credit for the time spent at Fairview, at the State Correctional Institution at Graterford, Pennsylvania.

On March 16, 1977, petitioner appealed his sentence to the Pennsylvania Superior Court which, on December 21, 1979, 273 Pa.Super. 329, 417 A.2d 674, affirmed the judgment of sentence. The sentence was, however, vacated as to the four counts of theft which merged into burglary. Thus, at that time, petitioner's sentence stood at 52 to 104 years. Petitioner then sought and obtained permission to appeal to the Supreme Court of Pennsylvania. After argument, however, the appeal was dismissed on June 24, 1982, 498 Pa. 367, 446 A.2d 603 as having been improvidently granted. Following the Supreme Court's dismissal, petitioner, on August 15, 1982, filed a petition pursuant to Pennsylvania's Post Conviction Hearing Act ("PCHA"), alleging that he was denied effective assistance of counsel because plea counsel failed to (1) advise him of his right to withdraw his plea, (2) failed to file the proper motions to withdraw the plea, and (3) failed to object to the imposition of multiple sentences. Petitioner further alleged that appellate counsel was ineffective for not raising the ineffectiveness of plea counsel. On October 15, 1982, Judge Stanziani dismissed petitioner's PCHA petition without a hearing.

On June 15, 1984, the Superior Court reversed Judge Stanziani's order of October 15, 1982, and remanded the matter for an evidentiary hearing with respect to the alleged ineffectiveness of both plea and appellate counsel. An evidentiary hearing was held on January 7, 1985. On May 15, 1985, the Montgomery County Court of Common Pleas denied petitioner's PCHA petition. Petitioner appealed to the Pennsylvania Superior Court which, on April 21, 1986, 356 Pa.Super. 601, 512 A.2d 723, affirmed the lower court's conclusion that neither petitioner's plea counsel nor appellate counsel was ineffective. Petitioner appealed to the Supreme Court of Pennsylvania which denied the petition for allowance of appeal on March 16, 1987, 514 Pa. 322, 523 A.2d 1103.

On May 28, 1987, petitioner filed a petition for writ of habeas corpus which, pursuant to 28 U.S.C. § 636 and Local Rule of Civil Procedure 7(I)(e), was referred to the United States Magistrate. On July 19, 1988, petitioner was granted leave to file a Traverse to the Response to his petition for writ of habeas corpus. The Traverse was filed on September 9, 1988. On February 23, 1989, the Magistrate issued a Report and Recommendation in which he recommended that the petition for writ of habeas corpus be denied. Petitioner was notified of his right to file written objections with the Clerk of Court. Nevertheless, on March 6, 1989, petitioner filed a "Motion for Reconsideration." On March 27, 1989, this Court denied petitioner's motion but granted him an additional ten days to file written objections. On April 5, 1989, petitioner filed written objections to the Magistrate's Report and Recommendation.

II. *Procedural Deficiencies*

Local Rule of Civil Procedure 7(IV)(b) mandates the respective responsibilities of both petitioner and this Court pursuant to 28 U.S.C. § 636(b)(1)(B):

Any party may object to a magistrate's proposed findings, recommendations or report ... within ten days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate and all parties, *written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections ... A judge shall make a de novo determination of those portions of the report or specified*

*proposed findings or recommendations to which objection is made* and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate. (emphasis added)

An examination of petitioner's objections reveals a total lack of compliance with the aforecited rule. Indeed, rather than specifically identifying portions of the Magistrate's Report and Recommendation to which he objects, petitioner advances a single conclusory allegation, to wit:

> After careful review of this Magistrate's Report and Recommendation it is apparent that this Magistrate never reviewed petitioner's Traverse as there is absolutely no mention of petitioner's traverse in the Magistrate's Report and Recommendation nor to the merits of the Constitutional claims discussed therein. The traverse contains uncontested averments of documented facts. These facts include, among other things, that no record exists which established that a colloquy was conducted by the trial court which comported explanation of the elements of the crimes for which petitioner entered a plea of guilty in violation of United States Constitutional law.

Petitioner's Objections, ¶ 6–7. We note that in the absence of substantiated objections to specific portions of the Magistrate's Report and Recommendation, we are not required to undertake a *de novo* review. *See Henderson v. Carlson,* 812 F.2d 874, 877–79 (3d Cir.1987).

Nevertheless, despite the procedural deficiencies in petitioner's objections, we elect to undertake a *de novo* review of the entire record and applicable law. *See generally Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985). To that end, we note, preliminarily, that while the Magistrate, in his Report and Recommendation, did not specifically cite to petitioner's traverse, with but a single exception, he fully and thoroughly addressed each of the points raised by petitioner in that pleading. Indeed, the only issue raised in the traverse not directly addressed by the Magistrate was the decision by the trial court to defer sentencing until the required psychiatric evaluation of petitioner was completed. As discussed below, neither that issue nor any of those addressed by the Magistrate in his Report and Recommendation constitute grounds for habeas relief.

### III. *Involuntary Guilty Plea*

Petitioner first challenges the validity of his guilty plea on the basis that it was not intelligently and voluntarily entered due to the trial judge's failure to fully explain the following four factors: (1) the elements of the crimes to which petitioner was pleading guilty, (2) the Commonwealth's burden of proof, (3) the right to trial by jury, and (4) the "presumption of innocence." In evaluating petitioner's claims, we note that the constitutional prerequisites for a valid guilty plea are substantially the same in federal and state courts. *Boykin v. Alabama,* 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969); *United States v. Trott,* 779 F.2d 912, 914 n. 1 (3d Cir.1985).

Prior to accepting a guilty plea, a trial judge has a duty to make an affirmative showing that the plea is intelligent and voluntary. *Boykin v. Alabama,* 395 U.S. at 242, 89 S.Ct. at 1711. Indeed, the "long standing test for determining the validity of a guilty plea is 'whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.' " *Hill v. Lockhart,* 474 U.S. 52, 106 S.Ct. 366, 369, 88 L.Ed.2d 203 (1985) *quoting North Carolina v. Alford,* 400 U.S. 25, 31, 91 S.Ct. 160, 164, 27 L.Ed.2d 162 (1970). A guilty plea may be constitutionally infirm if the defendant failed to understand the constitutional rights he was waiving by pleading guilty or had an incomplete understanding of the charges lodged against him. *Henderson v. Morgan,* 426 U.S. 637, 645 n. 13, 96 S.Ct. 2253, 2257 n. 13, 49 L.Ed.2d 108 (1976).

The Supreme Court, in *McCarthy v. United States,* 394 U.S. 459, 465, 89 S.Ct. 1166, 1170, 22 L.Ed.2d 418 (1969), held that the most efficient method of insuring the intelligent, voluntary nature of the guilty plea is through the colloquy between the trial judge, the defendant, and the defen-

dant's attorney. The Court stated that such a colloquy is:

> [D]esigned to assist the district judge in making the constitutionally required determination that a defendant's guilty plea is truly voluntary. Second, ... to produce a complete record at the time the plea is entered of the factors relevant to this voluntariness determination.

*Id.* *See also United States v. Allen*, 804 F.2d 244, 247 (3d Cir.1986). At a minimum, such a colloquy should establish that the defendant understood his right to a jury trial, the acts sufficient to constitute the offense for which he is charged, and the permissible range of sentences. *Boykin v. Alabama*, 395 U.S. at 245 n. 7, 89 S.Ct. at 1713 n. 7.

In the instant case, the state trial judge, some fifteen years ago, conducted a colloquy which meets or exceeds contemporary Supreme Court requirements. Indeed, the trial judge first explained the nature of the proceeding. (N.T. 4/4/74 at 3–4). Before accepting petitioner's guilty plea, the court questioned petitioner about his ability to understand the proceedings and the consequences of the plea. (N.T. 4/4/74 at 7–10, 14–15, 17–19). The trial judge fully explained the rights that petitioner would be surrendering, including the right to a jury trial and the right to require the state to prove his guilt beyond a reasonable doubt, were he to plead guilty:

> Q: Mr. Chacker, with respect to your saying that you understand, do you also understand that you have a right to stand trial for those offenses before a jury, and that the Commonwealth would have to prove their case in each one of these offenses beyond a reasonable doubt; and that by pleading guilty, you are waiving your right to that jury trial or those jury trials if there were more than one, or to a jury trial on all of them; do you understand that?
>
> A: I'm fully aware.

(N.T. 4/4/74 at 14).

The petitioner was fully informed of both the nature of and the factual basis underlying the crimes to which he was pleading, to wit, rape, burglary, theft, and loitering and prowling. (N.T. 4/4/74 at 9–13). In response to specific questioning, petitioner stated that he fully understood the nature of the charges against him. (N.T. 4/4/74 at 12, 13). In addition, petitioner was fully informed of the permissible range of sentences that he faced as a result of pleading guilty:

> Q: So, Mr. Chacker, if my mathematics is correct, the maximum imprisonment that you are facing would be one hundred and eleven years ... Do you understand that Mr. Chacker?
>
> A: I'm fully aware of it.

(N.T. 4/4/74 at 12).

As a further protection of petitioner's rights, the trial judge continually questioned Mr. Chacker regarding his ability to understand the proceedings and the consequences of his plea:

> Q: Do you feel that there is anything else about these matters about which you would like to talk with Mr. Salus [petitioner's attorney] before you enter your plea of guilty, because I want to be sure that you understand that you are waiving these rights and that you know exactly what you are doing? That's the reason that we have gone through the entire list of charges and of the amounts involved. Is there anything else that you would like to discuss with him?
>
> A: I don't believe so.

(N.T. 4/4/74 at 15). Finally, in order to insure that the colloquy was complete, the trial judge permitted both petitioner's counsel and the assistant district attorney to question petitioner concerning his ability to understand the proceedings and the consequences of his guilty plea. (N.T. 4/4/74 at 15–18). Petitioner indicated that he had thoroughly consulted with his counsel prior to entering a guilty plea and was satisfied with the representation he had received. (N.T. 4/4/74 at 15–16).

■ Petitioner has also challenged his guilty plea on the ground that the trial judge failed, in violation of Pennsylvania criminal procedure, to explicitly explain the "presumption of innocence." We note first that the Pennsylvania courts have expressly refused to invalidate guilty pleas due to

this omission. *See Commonwealth v. Wyatt*, 498 Pa. 543, 449 A.2d 569 (1982) (per curiam). More importantly, our review is not directed to the question of whether the trial court violated state procedural rules but, rather, whether the procedures followed in the state court were violative of the United States Constitution. *See Pulley v. Harris*, 465 U.S. 37, 41, 104 S.Ct. 871, 874–75, 79 L.Ed.2d 29 (1984); *United States ex rel. Hayward v. Johnson*, 508 F.2d 322, 330 (3d Cir.1975).

■ Based upon the aforementioned colloquy, the totality of the circumstances, and petitioner's previous exposure to and understanding of the criminal justice system, the trial judge made the following finding:

This Court finds as a matter of fact that these pleas of guilty have been entered with knowledge, intelligence and voluntarily, and therefore accepts the plea of guilty.

(N.T. 4/4/74 at 19). So, too, did the Pennsylvania Superior Court and Supreme Court hold that petitioner entered his guilty plea knowingly and voluntarily and that the plea was valid. As the Third Circuit held in *Siers v. Ryan*, "the state court's conclusion that defendant's guilty plea was voluntary is entitled to a presumption of correctness on our part." 773 F.2d 37, 42 (3d Cir.1985); see also 28 U.S.C. § 2254(d). Based upon this presumption and our review of the record, we find that petitioner's first ground for habeas relief, to wit, that his plea was not intelligently and voluntarily made, to be without merit.

### IV. *Advice of Petitioner's Counsel*

Petitioner's second ground for habeas relief is that his counsel advised him to enter a plea of guilty and indicated that petitioner would likely be sentenced to 10 to 20 years imprisonment were he to so plead. To the extent that petitioner is alleging that his counsel was ineffective for advising him to plead guilty, his position is totally without merit. The Supreme Court, in *McMann v. Richardson*, held that where, as here, a defendant is represented by counsel during the plea process and enters his plea upon the advice of counsel, the voluntariness of the plea depends on whether counsel's advice was "within the range of competence demanded in attorneys in criminal cases." 397 U.S. 759, 771, 90 S.Ct. 1441, 1449, 25 L.Ed.2d 763 (1970). As the Supreme Court explained in *Tollett v. Henderson*, a defendant who pleads guilty upon advice of counsel "may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the standards set forth in *McMann*." 411 U.S. 258, 267, 93 S.Ct. 1602, 1608, 36 L.Ed.2d 235 (1973).

■ Petitioner has not alleged and the record would not support a conclusion that his counsel's advice to plead guilty fell outside the "range of competence" demanded of attorneys in criminal cases. Indeed, given the evidence that the Commonwealth was prepared to adduce, including a detailed confession by petitioner to the crimes charged, (N.T. 4/4/74 at 20–29), counsel's advice to plead guilty clearly fell within the range of competence demanded of attorneys in criminal cases. We would also note that petitioner expressed to his attorney the desire to plead guilty in order to avoid putting his young victim through the rigors of a trial and to avoid embarrassment to his family from further media exposure. (N.T. 1/7/85 at 16–17). Moreover, on several occasions, petitioner expressed full satisfaction with the representation provided by his counsel. (N.T. 4/4/74 at 14, 15, 16).

The record is bereft of any evidence that petitioner's counsel had promised or guaranteed petitioner that he would receive a maximum sentence of ten to twenty years upon pleading guilty. There was absolutely no mention during the plea hearing of any agreement to recommend a ten to twenty year sentence. Moreover, the plea judge specifically addressed the issue:

Q: Has anybody threatened you or coerced you into entering this plea of guilty?

A: No.

Q: Has anybody made any promises to you as to the sentence that might ultimately result?

A: No.

(N.T. 4/4/74 at 9). The assistant district attorney similarly informed petitioner that the trial judge could sentence petitioner to one hundred and eleven years imprisonment. (N.T. 4/4/74 at 12, 17). In addition, defense counsel questioned petitioner on the same subject:

Q: [K]nowing the total number of years that you could be sentenced to, do you still want to plead guilty?

A: Yes.

Q: And this plea of yours is your own decision; is that correct?

A: That's correct.

(N.T. 4/4/74 at 16). Finally, at the January 7, 1985 evidentiary hearing, petitioner admitted that neither his plea counsel nor the assistant district attorney "had a meeting of the minds as to what their recommendation [as to sentence] was going to be to the Court." (N.T. 1/7/85 at 6).

Following a full and fair evidentiary hearing, the Pennsylvania state courts rejected petitioner's claim that his guilty plea was induced by a promise of a specific period of imprisonment. Based upon our review of the record, we agree and determine that petitioner's second ground for habeas relief is wholly without merit. *See Townsend v. Sain,* 372 U.S. 293, 312–13, 83 S.Ct. 745, 756–57, 9 L.Ed.2d 770 (1963); *Mayberry v. Petsock,* 821 F.2d 179, 185 (3d Cir.1987).

### V. *Denial of Due Process*

■ Petitioner next claims that he was denied due process when the trial court failed to consider his mental condition at the time of sentencing or provide him with an opportunity to produce witnesses on his behalf. Petitioner has never, in his state pleadings, in the PCHA hearing, or in his petition for writ of habeas corpus and traverse, alleged that he was not legally and mentally competent to enter a plea on April 4, 1974 or be sentenced on April 17, 1975 and February 25, 1977. Rather, petitioner alleges that the judge, at time of sentencing, should have afforded greater weight to petitioner's psychiatric problems. Petitioner's claims are wholly without merit.

Preliminarily, we note that Judge Stanziani determined that petitioner was competent to enter a plea only after an extensive plea colloquy which involved petitioner answering each and every question put to him by the judge, the assistant district attorney, and his own counsel. At the January 7, 1985 evidentiary hearing, the Honorable Samuel W. Salus (a judge in the Court of Common Pleas but petitioner's attorney on April 4, 1974 when said petitioner entered a plea of guilty), testified that petitioner, at the time of the plea, fully understood the nature of the proceedings and, in fact, engaged in extensive, rational discussions with him concerning possible strategies to be employed in court. (N.T. 4/4/74 at 14–17, 20, 24–26). The record reveals that at no time prior to or after the entry of a plea was a hearing as to petitioner's mental or legal competency sought or held. Finally, each of the appellate courts that addressed the issue has held that petitioner's plea was knowing, intelligent and voluntary.

The procedure followed in the instant case, to wit, deferring imposition of sentence pending psychiatric evaluation, initially committing petitioner to a state mental hospital for treatment and care, and, upon completion of psychiatric treatment, ordering petitioner incarcerated for the remainder of his sentence, with credit for time spent in treatment, has been upheld by the Pennsylvania Supreme Court. *See Commonwealth v. Barnes,* 448 Pa. 299, 292 A.2d 348, 350–351 (1972); *see generally* Mental Health and Mental Retardation Act of 1966, § 410(c).

As previously stated, Judge Stanziani, himself, ordered petitioner to undergo psychiatric evaluation, and proceeded to impose sentence only upon a medical determination that petitioner had received the maximum benefit from his psychiatric treatment. The record clearly shows that Judge Stanziani, at the time of sentencing, had considered the following materials:

1. Two presentence investigation reports which disclosed petitioner's previous criminal activities and his commitment, as a juvenile, to the Eastern State Psychiatric Hospital and School.

2. A report prepared by the Fairview State Hospital staff which characterized petitioner as hostile and prone to engage in manipulative behavior.

3. A psychological examination report which classified petitioner as compulsive and aggressive but not psychotic.

Finally, the record also demonstrates that petitioner was, at the time of sentencing, afforded ample opportunity to produce witnesses and offer mitigating circumstances. Indeed, petitioner presented the testimony of three witnesses: Lynn Chacker, his wife, Walter Chacker, his father, and the Reverend R.W. Diehl, petitioner's counselor at Fairview State Hospital.

Petitioner's dissatisfaction with the weight afforded both his psychiatric condition and the testimony of his witnesses by the sentencing judge clearly does not constitute either a due process violation or a valid ground for habeas relief.

### VI. *Deferral of Sentence*

While never mentioned in his original petition for writ of habeas corpus, petitioner, in the traverse, claims that Judge Stanziani, in violation of the agreement between counsel and the district attorney, deferred imposition of sentence pending completion of petitioner's psychiatric evaluation. A review of the record reveals, however, that it was fully understood by all parties that the sentence would be deferred.

Indeed, at the commencement of the plea hearing, the assistant district attorney stated:

I would like to state that a negotiated plea has been made in this matter between myself on behalf of the Commonwealth and Mr. Salus on behalf of the defendant, and that after the pleas of guilty are taken on all these various bills of indictment, sentence would be deferred, and Mr. Chacker would be sent to a state hospital ...

(N.T. 4/4/74 at 4–5). While defense counsel informed the assistant district attorney that petitioner was, at the time, already at a state hospital, defense counsel recognized that sentencing would have to be deferred:

I feel that I should say that Mr. Chacker is presently at a state hospital, and upon receipt of a report from the institution, I believe the Court would then be in a good position to pronounce sentence on these various bills of indictment.

(N.T. 4/4/74 at 5). Moreover, during the colloquy with the petitioner, Judge Stanziani, prior to accepting the guilty plea, asked the following question:

Q: Do you understand too ... that by pleading guilty at this time ... the only right to appeal that you will have as a result of this guilty plea and *the sentencing which follows, which is going to be, if I accept the plea recommendation, deferred* ...

A: Yes.

(N.T. 4/4/74 at 14). Immediately following the acceptance of the guilty plea, Judge Stanziani stated:

It would seem to me that we can, since it is not in the nature of sentencing, fulfill your request and recommendation that sentencing be deferred in this matter, and that Mr. Chacker be returned to Norristown State Hospital for a further mental health survey, with a report to be submitted to the Court prior to December, 1974.

(N.T. 4/4/74 at 19). Judge Stanziani subsequently officially deferred sentence and remanded petitioner to Norristown State Hospital. (N.T. 4/4/74 at 32). During none of the aforementioned half dozen exchanges did petitioner voice any objection to the clearly stated plan to defer imposition of sentence. Indeed, at the January 1985 evidentiary hearing, petitioner conceded that he was fully aware that imposition of sentence was to be deferred:

Q: This was merely a plea bargain whereby the District Attorney agreed to recommend to the Court that instead of sentencing you, that you would be referred to a mental health facility for a period of time, isn't that correct?

A: That's correct.

....

Q: What was your understanding going into this guilty plea as far as the outcome of your case?

A: There was no real understanding. *The sentence wouldn't be passed. I would be sent to a mental hospital, where I was already at the time.* That's as far as it was taken.

(N.T. 1/7/85 at 6, 10). We would finally note that petitioner received full credit for time served undergoing psychiatric evaluation. Petitioner's fourth ground for habeas relief is wholly without merit.

## VII. *Excessive Sentence*

■ Petitioner claims that the sentence imposed by Judge Stanziani was excessive and "outside the guidlines [sic] set forth by the legislature of the Commonwealth of Pennsylvania." First, we note that the Pennsylvania Superior Court held that petitioner's sentence was within the permissible statutory limit, *see Commonwealth v. Chacker*, 273 Pa.Super. 329, 333–35, 417 A.2d 674 (1979) and fully complied with all procedural requirements under Pennsylvania law. *See Commonwealth v. Martin*, 466 Pa. 118, 351 A.2d 650 (1976). We would note that, as of the time of sentencing, the Pennsylvania legislature had not yet enacted sentencing guidelines. Our review of the record, however, does indicate that petitioner's sentence fell within the permissible statutory limit in effect at the time.

Petitioner argues that the sentence imposed by the trial court was unduly severe and not within the scope of penal rehabilitation. Preliminarily, we would note our agreement with the sound reasons advanced by the sentencing judge in support of the sentence imposed:

> [D]efendant had the opportunity to begin a productive life. What resulted, however, was a six week crime spree of burglaries, thefts, loitering, and a rape. The rape of the eight year old girl is particularly tragic in view of the chilling specter of the girl's potential inability to conceive a child in later life ... Reports from the professionals at Fairview portray defendant as a hostile, aggressive individual who fails to conform to social norms but who is capable of controlling his behavior to achieve his desires. The Court concluded from the foregoing that

its sentence should reflect its studied analysis of defendant as a cunning, malevolent person who proved unresponsive to psychiatric treatment and demonstrated himself to be an extreme danger to individuals in the various communities he frequented.

*Commonwealth v. Chacker*, No. 700 (Common Pleas, Montg. Co., October 3, 1977) slip op. at 20–21. Even were this Court of the opinion that the petitioner's sentence was excessive, and it is not of that opinion, it is well established that "the severity of the defendant's sentence alone constitutes no ground for [habeas] relief." *United States ex rel. Jackson v. Myers*, 374 F.2d 707, 711 n. 11 (3d Cir.1967); *see also Townsend v. Burke*, 334 U.S. 736, 741, 68 S.Ct. 1252, 1255, 68 S.Ct. 1252 (1948). Indeed, as the Third Circuit held in *Jones v. Superintendent of Rahway State Prison*, 725 F.2d 40, 42–43 (3d Cir.1984), attacks on the disparity of sentences are not cognizable under the habeas corpus statute. Accordingly, petitioner's fifth ground for habeas relief is without merit.

## VIII. *Ineffective Assistance of Plea Counsel*

Petitioner claims that he was denied effective assistance of counsel because his plea counsel: (1) failed to object, at the plea hearing and on appeal, to the allegedly deficient plea colloquy engaged in by the plea judge, and (2) failed to advise him of his right to challenge the validity of his guilty plea and failed to preserve that issue for appeal.

It is well established that a claim of ineffective assistance of counsel must be evaluated against the two-part test enunciated in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). First, petitioner must show that his "counsel's representation fell below an objective standard of reasonableness." *Id.* at 688, 104 S.Ct. at 2064. Second, the petitioner must show that "there is a reasonable probability that, but for the counsel's unprofessional errors, the result of the proceedings would have been different." *Id.* at 694, 104 S.Ct. at 2068. However, the

Supreme Court has held that there is no reason for a trial court deciding an ineffective assistance of counsel claim to approach the inquiry in the same order or even to address both prongs of the test if the petitioner makes an insufficient showing on one:

A court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies ... If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, this course should be followed.

*Id.* at 697, 104 S.Ct. at 2069.

■ As previously stated, both the Commonwealth of Pennsylvania courts and this Court have determined that petitioner's plea of guilty was entered voluntarily and knowingly. It is axiomatic, therefore, that the failure of petitioner's plea counsel to object, at the plea hearing or on appeal, to the nature of the plea colloquy engaged in by the plea judge, does not pass the second prong of the *Strickland* test. Indeed, it is well established that counsel cannot be deemed ineffective for failing to pursue a meritless claim. *See Jones v. Barnes*, 463 U.S. 745, 750–754, 103 S.Ct. 3308, 3312–3314, 77 L.Ed.2d 987 (1983). For precisely the same reason, plea counsel's failure to both explicitly inform petitioner of his right, pursuant to Pa.R.Crim.P. 321,[1] to challenge the validity of his guilty plea and preserve that issue for appeal, fails to pass the second prong of the *Strickland* test.

We would also point out that, at the time of the plea hearing, Judge Stanziani generally addressed the limited appellate rights an individual would retain subsequent to entering a guilty plea:

Q: Do you understand that ... by pleading guilty at this time you are waiving all those rights to appeal, and the only right to appeal that you will have as a result of this guilty plea and the sentencing which follows [will be] ... the rights to appeal which you retain with regard to *whether or not the plea is voluntary,* whether this Court has jurisdiction, and whether the sentence that the Court administers is too severe. Do you understand that?

A: Yes.

(N.T. 4/4/74 at 14). In addition, the assistant district attorney addressed the issue:

Q: And you realize that you have a very limited right of appeal once you have pled guilty; is that correct?

A: That's correct.

(N.T. 4/4/74 at 18). Moreover, petitioner, having entered a number of guilty pleas in Pennsylvania courts, was generally familiar with the pleading process. (N.T. 1/7/85 at 9). Nevertheless, for almost two years following the plea hearing and subsequent sentencing, petitioner never indicated either orally or in writing that wished to withdraw his guilty plea. (N.T. 1/7/85 at 23). In fact, it was not until petitioner was transferred from Fairview to Graterford, that he thought of withdrawing his plea. (N.T. 1/7/85 at 24). Thus, because petitioner can point to no prejudice resulting from the *alleged* ineffectiveness of plea counsel, this ground for habeas relief is without merit.

## IX. *Ineffectiveness of Appellate Counsel*

Petitioner finally claims that he was denied effective assistance of counsel because (1) his appellate counsel failed to raise the alleged ineffectiveness of plea counsel, and (2) because a conflict of interest existed between plea and appellate counsel. Having previously determined that plea counsel was not ineffective, we reject petitioner's first claim against appellate counsel as meritless. *See Jones v. Barnes, supra.*

■ Petitioner also alleges that because both his plea and appellate counsel were employed by the Montgomery County Pub-

---

**1.** Pennsylvania Rule of Criminal Procedure 321 states:

Challenge to Guilty Plea

(a) A motion challenging the validity of a guilty plea, or the denial of a motion to with-draw a guilty plea shall be in writing and shall be filed with the trial court within ten (10) days after imposition of sentence.

lic Defender's Office, a conflict of interest existed which resulted in his receiving ineffective assistance of counsel. Where it is alleged that trial counsel experienced a conflict of interest in representing a defendant, prejudice will be presumed "only if defendant demonstrates that counsel 'actively represented conflicting interest' and that 'an actual conflict of interest adversely affected his lawyer's performance.'" *Strickland v. Washington,* 466 U.S. at 692, 104 S.Ct. at 2067 *quoting Cuyler v. Sullivan,* 446 U.S. 335, 348, 350, 100 S.Ct. 1708, 1719, 1720, 64 L.Ed.2d 333 (1980). As the Supreme Court held in *Cuyler v. Sullivan:*

> [T]he possibility of conflict is insufficient to impugn a criminal conviction. In order to demonstrate a violation of his Sixth Amendment rights, a defendant must establish that an actual conflict of interest adversely affected his lawyer's performance.

446 U.S. at 350, 100 S.Ct. at 1719.

In the present case, petitioner has completely failed to demonstrate either that his counsel actively represented conflicting interests or that his counsels' performances were adversely affected by an actual conflict of interest. More important, however, is the fact that petitioner was afforded an opportunity to raise the claims of ineffective plea counsel through his PCHA petition, where he was represented by private counsel and not by members of the Montgomer County Public Defender's Office. Accordingly, because petitioner has failed to meet the burden of proof established by *Strickland* and *Cuyler,* his final ground for habeas relief is without merit.

### X. *Conclusion*

For the reasons stated above, the Report and Recommendation of the Magistrate recommending that the petition for writ of habeas corpus be denied will be approved and adopted.