**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**DEC 18 2001**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

ERNEST MARVIN CARTER, JR.,

Petitioner-Appellant,

v.

GARY GIBSON, Warden, Oklahoma
State Penitentiary,

Respondent-Appellee.

No. 00-6177
(D.C. No. CIV-97-943-L)
(W.D. Okla.)

**ORDER AND JUDGMENT** *

Before **KELLY** , Circuit Judge, **BRORBY** , Senior Circuit Judge, and **BRISCOE** ,
Circuit Judge.

Appellant Ernest Marvin Carter, Jr., was convicted in Oklahoma County

District Court of felony murder, *see* Okla. Stat. tit. 21, § 701.7(B), and sentenced

to death. He now appeals the denial of his federal habeas petition seeking to

overturn both the conviction and sentence. Exercising jurisdiction pursuant to

28 U.S.C. §§ 1291 and 2253(c), we affirm.

---

* This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

## BACKGROUND

On January 27, 1990, at 8:00 p.m., Eugene Manowski relieved Ben Richardson of security guard duties at the Oklahoma Auto Auction in Oklahoma City, Oklahoma. When Mr. Richardson left, Mr. Manowski was alone, and the business' gates were padlocked. Twelve hours later, when Mr. Richardson returned to work, the lights in the guard shack were off, the guard shack door was open, the gate to the auto yard was partially open, the gate lock had been bent or cut, and Mr. Manowski was lying on the ground with blood visible. He died from a hard contact gunshot wound to the head.

Mr. Carter had been fired from his employment at the Auction approximately two weeks before the murder. He was not bitter about the firing, because he believed he deserved to be fired for sleeping on the job.

Tammy Lewis, the former girlfriend of Mr. Carter's co-defendant, Charles Summers, [1] testified that on the evening of January 27, she, Mr. Carter and Mr. Summers drove from Chandler, Oklahoma, to the Oklahoma Auto Auction. During the ride, there was no discussion. After arriving at the Auto Auction, Mr. Carter left the car, taking bolt cutters. Ms. Lewis and Mr. Summers returned to Chandler. Approximately two hours later, Mr. Carter awakened Mr. Summers

---

[1]    Mr. Summers also was convicted of felony murder and received a life sentence.

and Ms. Lewis, telling them he needed help with a truck and he had killed a man. Mr. Carter, Ms. Lewis and Mr. Summers drove to a white wrecker truck with the word "Auction" on it. The truck would not start. They towed it to Mr. Summers' body shop, where Mr. Carter and Mr. Summers tried to take the wrecker piece out of the truck bed. Thereafter, Ms. Lewis left. Later, she assisted the two men in removing a black truck they had gotten stuck on Mr. Carter's step-grandfather's property. Ms. Lewis saw parts of the wrecker attachment next to the black truck. She observed Mr. Summers and Mr. Carter painting the "Auction" truck. A few days later, the three tried to burn that truck.

Larry Denson, an automobile mechanic who occasionally did work for Mr. Summers and who was his best friend, testified that Mr. Summers asked him to start a white pickup with a wrecker attachment. The second time Mr. Denson tried to start the truck, both Mr. Summers and Mr. Carter were present. Mr. Carter told Mr. Denson that a man saw him take the truck, but the man would not tell anyone because he "offed him." Trial Tr. vol. VI at 1374.

Charles Marshall testified that Mr. Summers had borrowed bolt cutters from him. Mr. Summers told Mr. Marshall he needed the bolt cutters for "a job." *Id.* vol. IV at 796. Sergeant Robertson, a ballistics and tool mark examiner, testified the characteristics of the borrowed bolt cutters were consistent with the marks left on the broken lock. Footprints near the Auction were consistent with

-3-

boots owned by Mr. Carter. Also, he possessed bullets similar to the one used to kill the victim. The forensic pathologist who performed the autopsy on the victim testified that the victim died from a gunshot wound that entered his head approximately one inch in front of, and approximately four inches above, the left ear. According to the pathologist, the characteristics of the entrance wound conclusively indicated that the murder weapon was in direct contact with the victim's head when the fatal shot was fired.

Mr. Carter testified that he was not involved in the murder or robbery. He admitted seeing the wrecker truck in Mr. Summers' body shop the same day he heard about the murder. Also, he admitted helping Mr. Summers paint the truck and remove the wrecker assembly, but he denied burning the truck. Mr. Carter testified that Mr. Summers had asked him whether he knew of anyone who could steal a wrecker from the Auction. Also, Mr. Carter testified that about one week before the murder Mr. Summers had offered a man $500 to obtain a wrecker and had also asked Mr. Carter to steal a wrecker. Although Mr. Carter did not believe Mr. Summers was at the murder, he thought someone had stolen the wrecker for him.

The jury found Mr. Carter guilty of felony murder, killing Mr. Manowski while committing a robbery with a firearm, and sentenced him to death after finding he committed the murder to avoid arrest or prosecution. The Oklahoma

Court of Criminal Appeals affirmed on direct appeal, *Carter v. State*, 879 P.2d 1234 (Okla. Crim. App. 1994), *cert. denied*, 513 U.S. 1172 (1995), and denied post-conviction relief, *Carter v. State*, 936 P.2d 342 (Okla. Crim. App. 1997). Thereafter, Mr. Carter unsuccessfully sought federal habeas corpus relief.

The federal district court granted a certificate of appealability (COA) to raise these claims on appeal: (1) the trial court's lack of subject matter jurisdiction; (2) ineffective assistance of trial and appellate counsel for failing to assert lack of subject matter jurisdiction; (3) ex post facto application of new law; (4) ineffective assistance of counsel at trial and on appeal; (5) the trial court's improper refusal to sever; and (6) the State's failure to prove an essential element of the crime charged and/or the existence of the aggravating circumstance. After conducting a case management conference, this court granted Mr. Carter a COA to raise an additional issue: Oklahoma's failure to protect judges from public opinion influences.

## STANDARDS OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs this appeal. *See Williams v. Taylor*, 529 U.S. 362, 402 (2000). Under AEDPA, the applicable standard of review depends upon whether the state courts addressed the merits of a particular claim for relief. If the state courts decided the merits of a claim, Mr. Carter is entitled to habeas relief if the decision "was

-5-

contrary to, or involved an unreasonable application of, clearly established"

Supreme Court precedent, 28 U.S.C. § 2254(d)(1), or "was based on an

unreasonable determination of the facts in light of the evidence presented in the

State court proceeding," *id.* § 2254(d)(2). Federal courts presume the state

court's factual findings are correct, unless rebutted by clear and convincing

evidence. *Id.* § 2254(e)(1). If the state courts did not decide a claim on its

merits, and the claim is not procedurally barred, this court reviews the district

court's legal conclusions *de novo* and its factual findings, if any, for clear error.

*McCracken v. Gibson*, 268 F.3d 970, 975 (10th Cir. 2001).

## DISCUSSION

### I. Subject Matter Jurisdiction

Mr. Carter argues the trial court lacked subject matter jurisdiction to try,

convict and sentence him because the Information did not allege facts establishing

every element of felony murder, including each element of the underlying robbery

with a firearm. The Information stated:

> On or about the 28th day of January, 1990, A.D., the crime of murder
> in the first degree was feloniously committed in Oklahoma County,
> Oklahoma, by Ernest Marvin Carter Jr and Charles L Summers who
> while acting jointly in the commission of robbery with firearms
> wilfully and unlawfully killed Eugene Manowski by shooting him
> with a pistol inflicting mortal wounds which caused his death on 28th
> day of January, 1990, contrary to the provisions of section 701.7 of
> Title 21 of the Oklahoma Statutes, and against the peace and dignity
> of the State of Oklahoma.

O.R. vol. I at 1.

On post-conviction review, the Oklahoma Court of Criminal Appeals deemed this claim waived because Mr. Carter failed to raise it on direct appeal. *Carter* , 936 P.2d at 344. [2] Because it is easier to decide this claim on its merits rather than resolve the procedural bar issue, we proceed to the merits. *See Romero v. Furlong* , 215 F.3d 1107, 1111 (10th Cir.), *cert. denied* , 531 U.S. 982 (2000); *see also Johnson v. Gibson* , 169 F.3d 1239, 1251-52 (10th Cir. 1999) (pre-AEDPA) (assuming, *arguendo* , similar claim was not procedurally barred).

Since the state courts did not consider this claim on its merits, this court reviews the federal district court's decision *de novo* . *McCracken* , 268 F.3d at 975. Relying on *Johnson* , the federal district court held that the Information did not violate Mr. Carter's constitutional rights because it sufficiently apprised him of the nature of the charges against him. We agree.

A challenge to the adequacy of the Information under Oklahoma law is a question of state law, which this court has no power to correct. *Johnson* , 169 F.3d at 1252; *see also Knewel v. Egan* , 268 U.S. 442, 445 (1925). Rather, this court may grant habeas relief only if the state court error deprived the

---

[2]    Citing 28 U.S.C. § 2254(b)(2), the federal district court declined to apply procedural bar and instead proceeded to the merits. Section 2254(b)(2), however, permits a habeas court to address the merits of an unexhausted claim in order to deny relief. This section does not apply here, because the claim was exhausted.

defendant of fundamental rights guaranteed by the Constitution. *Knewel*, 268 U.S. at 446-47; *Johnson*, 169 F.3d at 1252. For example, an Information "may violate the Sixth Amendment by failing to provide" "adequate notice of the nature and cause of the accusations against" the defendant. *Johnson*, 169 F.3d at 1252.

Mr. Carter maintains his claim does not, like *Johnson*, concern Sixth Amendment rights. Rather, he believes that for ninety years, Oklahoma law required the Information to recite every element of a charged crime. Thus, he argues he had a protected liberty interest, which the state courts ignored, thereby violating his Fourteenth Amendment due process rights. *See Vitek v. Jones*, 445 U.S. 480, 488 (1980) ("state statutes may create liberty interests that are entitled to the procedural protections of the Due Process Clause of the Fourteenth Amendment"). Also, he argues that executing him without meeting subject matter jurisdiction guaranteed under state law constitutes cruel and unusual punishment contrary to the Eighth Amendment.

Contrary to Mr. Carter's assertion, however, at the time of Mr. Carter's trial, in 1991, Oklahoma law did not clearly require an Information to recite every element of the offense. At that time, some Oklahoma case law indicated an Information's failure to allege the facts constituting an offense did not affect the trial court's jurisdiction. *See Hatch v. State*, 924 P.2d 284, 294 (Okla. Crim. App.

1996) (citing *Bruner v. State*, 612 P.2d 1375, 1380 (Okla. Crim. App. 1980); *Holloway v. State*, 602 P.2d 218, 220 (Okla. Crim. App. 1979)). Rather, an Information was sufficient so long as it did not mislead the defendant and did not expose him to the possibility of later being put in jeopardy a second time for the same offense. *See, e.g.*, *Doyle v. State*, 785 P.2d 317, 326 (Okla. Crim. App. 1989); *Jefferson v. State*, 675 P.2d 443, 445 (Okla. Crim. App. 1984); *Nealy v. State*, 636 P.2d 378, 380 (Okla. Crim. App. 1981). *See generally Miller v. State*, 827 P.2d 875, 880-83 (Okla. Crim. App. 1992) (Lumpkin, Vice-Presiding J., concurring in part and dissenting in part) (recognizing, by citing several cases, that "diametric opposing lines of case law authority" exist, with one line suggesting that Information need not allege each element of offense charged because notice pleading is sufficient; distinguishing pleading elements from pleading facts), *majority opinion overruled by* *Parker v. State*, 917 P.2d 980 (Okla. Crim. App. 1996).

In 1992, however, after Mr. Carter was tried but before disposition of his direct appeal, the Oklahoma appellate court noted that "[t]he requirement that the Information state facts to allege every material element of the crime charged has been firmly rooted in Oklahoma jurisprudence since the time of statehood." *Id.* at 877 (citing cases). *Miller* held Oklahoma requires the Information to set forth the essential elements of the charged offense, and, if the Information does

not recite facts to allege every material element of the crime charged, it fails to confer subject matter jurisdiction on the district court. *Id.* at 877, 879; *see also, e.g.*, *Tiger v. State*, 900 P.2d 406, 408 (Okla. Crim. App. 1995), *overruled by Parker*, 917 P.2d 980; *Pickens v. State*, 885 P.2d 678, 684 (Okla. Crim. App. 1994), *overruled by Parker*, 917 P.2d 980; *Allen v. State*, 874 P.2d 60, 65 (Okla. Crim. App. 1994).

*Parker*, decided after Mr. Carter's direct appeal and after the trial court denied his post-conviction application, but before the Oklahoma Court of Criminal Appeals affirmed the denial of post-conviction relief, however, overruled *Miller*'s requirement that the Information allege each element of the crime to be sufficient to confer jurisdiction and instead held that to satisfy due process concerns the Information need only provide notice of the charges and apprise the defendant of what he must defend against at trial. *Parker*, 917 P.2d at 985-86; *see also Miles v. State*, 922 P.2d 629, 630 (Okla. Crim. App. 1996) (denying rehearing). The Oklahoma Court of Criminal Appeals later noted that *Parker* adopted one of at least two distinct paths Oklahoma case law had taken in interpreting Oklahoma statutes governing an Information. *Miles*, 922 P.2d at 631 & n.5 (citing dissents in *Tiger* and *Miller*).

Thus, Oklahoma case law was not consistent at the time of Mr. Carter's trial. But the Oklahoma Court of Criminal Appeals had resolved any questions

-10-

concerning subject matter jurisdiction and the sufficiency of an Information by the time it decided Mr. Carter's post-conviction appeal. We may not reexamine the state appellate court's determination of the state law questions; rather, we may decide only whether Oklahoma violated Mr. Carter's constitutional rights. *See Estelle v. McGuire*, 502 U.S. 62, 67 (1991).

Here, there was no constitutional violation. The Information was adequate to give Mr. Carter notice of the charge against him. *See Johnson*, 169 F.3d at 1252. Moreover, he does not indicate he lacked notice of the charge against him. And the trial record clearly shows he was charged with and defended against felony murder. Mr. Carter therefore could not have had a protected liberty interest requiring the Information to allege facts establishing every element of felony murder. Nor was his death sentence cruel and unusual punishment.

## II. Counsel's Failure to Assert Lack of Subject Matter Jurisdiction

Mr. Carter argues his trial and appellate counsel provided ineffective assistance because they failed to argue lack of subject matter jurisdiction.

### A. Ineffective assistance of trial counsel

**1. Procedural bar.** Mr. Carter raised this claim for the first time in his application for post-conviction relief. The Oklahoma Court of Criminal Appeals deemed the claim waived because it could have been raised on direct

appeal as it relied on facts discernable from the record. *Carter*, 936 P.2d at 345. This procedural bar will be adequate if (1) trial and appellate counsel differ and (2) the claim can be resolved solely on consideration of the record. *English v. Cody*, 146 F.3d 1257, 1264 (10th Cir. 1998). In this case, it appears trial and appellate counsel did not differ. Although trial counsel David Autry's name is not on the direct appeal brief, he indicated in an affidavit filed with the habeas petition that he was in fact assigned to write part of that brief. Fed. Dist. Ct. R. vol. 3, doc. 15, app. H at 4. Trial counsel's assistance with the brief, along with appellate counsel's failure to raise any ineffective assistance of trial counsel issues on direct appeal, suggests named appellate counsel was in an awkward position. *Cf. McCracken*, 268 F.3d at 977 (recognizing first *English* requirement was not met where trial counsel represented petitioner on direct appeal); *Smallwood v. Gibson*, 191 F.3d 1257, 1270 (10th Cir. 1999) (rejecting conflict of interest argument where appellate counsel from same public defender's office raised ineffective assistance of counsel claim on direct appeal). Accordingly, we proceed to the merits of this claim.

**2. Merits.** To obtain habeas relief, Mr. Carter must establish both that his trial attorneys' representation was deficient, measured against an objective standard of reasonableness, and that there is a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would

-12-

have been different. *Strickland v. Washington*, 466 U.S. 668, 687, 688, 694 (1984).

Mr. Carter cannot show counsel's failure to challenge the Information amounted to deficient performance. As indicated above, *Miller*, 827 P.2d 875, which was decided after Mr. Carter's murder trial and later overruled by *Parker*, 917 P.2d 980, was the first case to clearly state jurisdictional requirements for an Information. Thus, trial counsel was not ineffective for failing to anticipate the holding in *Miller*. *See Sherrill v. Hargett*, 184 F.3d 1172, 1175 (10th Cir. 1999).

Also, Mr. Carter cannot show prejudice. Prejudice is judged by current law. *Newsted v. Gibson*, 158 F.3d 1085, 1091 (10th Cir. 1998). Under *Parker*, the Information was sufficient to provide Mr. Carter notice of the charge against him.

Mr. Carter criticizes reliance on *Newsted*, because that case relied on *Lockhart v. Fretwell*, 506 U.S. 364 (1993), which he contends was limited by *Williams*, 529 U.S. at 391-93. *Williams*, however, did not limit *Lockhart* on this basis. *See Williams*, 529 U.S. at 393.

**B. Ineffective assistance of appellate counsel**

Ineffective assistance of appellate counsel claims are also governed by *Strickland*. *Smith v. Robbins*, 528 U.S. 259, 285 (2000). Thus, Mr. Carter must show that his appellate counsel was objectively unreasonable in failing to

-13-

discover and raise this issue on appeal and that there is a reasonable probability that but for counsel's unreasonable failure to raise the issue he would have prevailed on appeal. *See id.*

Addressing this claim on post-conviction review, the Oklahoma Court of Criminal Appeals determined, without providing reasoning, that Mr. Carter failed to show either deficient performance or prejudice. *Carter*, 936 P.2d at 345-46 (citing *Strickland*). Because Mr. Carter cannot show prejudice due to trial counsel's failure to challenge subject matter jurisdiction, it follows that he also cannot show prejudice by appellate counsel's failure to assert the issue. *See Strickland*, 466 U.S. at 697 (permitting court to affirm denial of habeas relief on whichever prong is easier to resolve). Accordingly, deferring to the state court's result, *Walker v. Gibson*, 228 F.3d 1217, 1241 (10th Cir. 2000), *cert. denied*, 121 S. Ct. 2560 (2001), we conclude the Oklahoma Court of Criminal Appeals' decision was not contrary to or an unreasonable application of *Strickland*, *see* 28 U.S.C. § 2254(d)(1).

## III. *Ex Post Facto* Application of New Law

Mr. Carter argues the Oklahoma appellate court's applying of *Parker*, 917 P.2d at 986, to confer subject matter jurisdiction on his case violates *ex post facto* rules. Mr. Carter maintains *Parker* was unforeseeable, because *Tiger*, the most recent decision before *Parker*, reaffirmed that the Information must allege

-14-

all elements of the crime.  Accordingly, Mr. Carter argues applying *Parker* to his case is an impermissible retroactive application of new law.

Because Mr. Carter never presented this issue to the Oklahoma courts, it remains unexhausted.  *See Jones v. Gibson*, 206 F.3d 946, 955 (10th Cir.), *cert. denied*, 531 U.S. 998 (2000).  Nevertheless, we can deny this claim on its merits.  *See* 28 U.S.C. § 2254(b)(2).  An alleged *ex post facto* violation is a question of law, *cf. Lustgarden v. Gunter*, 966 F.2d 552, 553 (10th Cir. 1992), which we review *de novo*, *McCracken*, 268 F.3d at 975.

"[L]imitations on *ex post facto* judicial decisionmaking are inherent in the notion of due process."  *Rogers v. Tennessee*, 532 U.S. 451, 121 S. Ct. 1693, 1697 (2001).  The test for deciding if a retroactive application of a judicial decision violates due process is one of foreseeability.  *Fultz v. Embry*, 158 F.3d 1101, 1103 (10th Cir. 1998).  A judicial decision is unforeseeable and may not be given retroactive effect when it is unexpected and indefensible by reference to the law in effect prior to the conduct in issue.  *See Bouie v. City of Columbia*, 378 U.S. 347, 354 (1964); *see also Rogers*, 121 S. Ct. at 1700.

Here, there is no retroactivity or foreseeability problem. As discussed previously, prior to the crime, Oklahoma law had not clearly established what was needed for an adequate Information. [3]

## IV. Failure to Protect Judges from Public Opinion Influences

Mr. Carter argues he received constitutionally defective judicial process during post-conviction proceedings. As proof, Mr. Carter cites the state appellate court's failure to grant him relief on his subject matter jurisdiction claim. He maintains the elected judiciary was not sufficiently independent of public opinion due to a lack of institutional safeguards. He further argues the Oklahoma system which places the judges at risk for loss of their income cannot and does not guarantee fair and impartial proceedings. [4]

---

[3] The Oklahoma Court of Criminal Appeals has expressly held that application of *Parker* does not violate *ex post facto* prohibitions. *Hatch*, 924 P.2d at 294; *Miles*, 922 P.2d at 631.

[4] Mr. Carter also argues the Oklahoma Court of Criminal Appeals routinely finds issues waived or barred by res judicata without searching for constitutional error. And if the court is unable to avoid constitutional error, it routinely finds harmless error. He maintains the court approves repeated instances of prosecutorial misconduct. Finally, he asserts that Judge Charles Owens, the post-conviction trial judge, was biased because he had published his beliefs that post-conviction applications were frivolous and meritless.

Mr. Carter did not raise these arguments in his federal habeas petition. We do not consider these arguments, absent extraordinary circumstances. *See Fowler v. Ward*, 200 F.3d 1302, 1310 (10th Cir.), *cert. denied*, 531 U.S. 932 (2000). Mr. Carter presents no extraordinary circumstances.

Mr. Carter raised this claim for the first time in post-conviction proceedings. The Oklahoma Court of Criminal Appeals deemed it waived because Mr. Carter could have, but did not, raise it on direct appeal. *Carter*, 936 P.2d at 344-45. Because it is easier to decide this claim on its merits than to resolve the procedural bar issue, we do so. *See Romero*, 215 F.3d at 1111.

"A fair trial in a fair tribunal is a basic requirement of due process." *In re Murchison*, 349 U.S. 133, 136 (1955). Mr. Carter, however, has not shown he did not receive a fair trial. He has failed to cite any constitutional authority prohibiting states from publicly electing its judiciary. And the judicial rulings denying him post-conviction relief alone do not establish bias or partiality. *Liteky v. United States*, 510 U.S. 540, 555 (1994). Mr. Carter's allegations of bias are unsupported and do not show actual judicial bias or even an appearance of bias. We therefore conclude Mr. Carter has not proven his due process right to a fair and impartial state judiciary was violated by a lack of institutional safeguards.

## V. Ineffective Assistance of Trial and Appellate Counsel

Mr. Carter argues the Oklahoma County Public Defender's office was so overworked and underfunded that its attorneys could not devote the time and effort necessary to provide him a minimally effective defense at trial or on appeal. According to Mr. Carter, he met with trial counsel for approximately two hours, an inexperienced investigator devoted his time to guilt issues only, and appellate

counsel was threatened with firing if she sought additional extensions of time to file the direct appeal brief. He submits he was prejudiced, for the reasons discussed below, by both trial and appellate counsel.

## A. Ineffective assistance of trial counsel

Mr. Carter first argued ineffective assistance of trial counsel in his application for post-conviction relief. The Oklahoma appellate court deemed these claims waived because they could have been discerned from a review of the record or were based on facts within Mr. Carter's knowledge. *Carter*, 936 P.2d at 345. The State's procedural bar, however, is not adequate to preclude our review, because neither of the *English* requirements, *see* section II.A.1., *supra*, is met. First, trial counsel Autry had been assigned to help with the appellate brief. Second, the trial record does not contain all of the evidence necessary to resolve this claim. *Romano v. Gibson*, 239 F.3d 1156, 1180 (10th Cir. 2001), *cert. denied*, 2001 WL 1117724, 2001 WL 1168335 (U.S. Nov. 26, 2001) (Nos. 01-6359 & 01-6439). Thus, we review this claim *de novo*. *Id.*

### 1. Improperly advised Mr. Carter to testify and failed to prepare him to testify.

Mr. Carter argues counsel neither spent sufficient time with him to properly advise him whether to testify nor provided practice sessions or advice regarding courtroom behavior and demeanor to prepare him to testify. To support these arguments, Mr. Carter points to counsel's acknowledgment that

Mr. Carter made a poor appearance before the jury and to a juror's statement to Mr. Autry that the jury would not have sentenced Mr. Carter to death except for his demeanor and attitude while testifying.

Even assuming Mr. Carter established deficient performance, the federal district court correctly concluded he had failed to show prejudice, *i.e.*, that if counsel had not committed the errors claimed, there is a reasonable probability that the case's outcome would have been different. *See Boyd v. Ward*, 179 F.3d 904, 915 (10th Cir. 1999) (citing *Strickland*). We agree. In light of the strong evidence supporting his conviction and the aggravating circumstance, Mr. Carter cannot show the outcome at either stage of trial probably would have been different if he had not testified or if he had been better prepared to testify. We give counsel's after trial assertion that Mr. Carter made a poor appearance before the jury little weight. Also, we may not consider the juror's statement. *See* Okla. Stat. tit. 12, § 2606(b) (prohibiting consideration of juror statements regarding matters affecting jury deliberations); *see also* Fed. R. Evid. 606(b). Even assuming this court could consider the juror's statement, *see Walker*, 228 F.3d at 1233 & n.8, it is not compelling or specific. And it may not impeach the jury's verdict. *See Tanner v. United States*, 483 U.S. 107, 117 (1987); *McDonald v. Pless*, 238 U.S. 264, 268-69 (1915). Rather, the jury verdict, not an

individual juror opinion expressed after trial, carries legal weight.  *Walker* ,

228 F.3d at 1233.

### 2. Failure to adequately investigate mitigation evidence.

Mr. Carter argues trial counsel failed to adequately investigate and present

mitigating evidence concerning his mental-health status, a prior head injury, [5] his

"horrific childhood," physical and mental abuse and his violent childhood home

environment.  The federal district court found that Mr. Carter did not prove

deficient performance because he never showed he conveyed this additional, but

unused, mitigating information to his trial counsel.  There is evidence in the

record, however, that neither counsel nor the investigator focused on second-stage

preparation.  Also, there is no record evidence that counsel or the investigator

ever informed Mr. Carter what type of information might be useful in the

second-stage proceedings.  Based on the record, we cannot conclude trial

counsel's performance was deficient.

The federal district court further found no prejudice because this mitigation

evidence was slight compared to the callous nature of the crime–killing a security

guard execution-style for the sole purpose of stealing a wrecker winch assembly,

presumably for $500.  We agree that Mr. Carter has not shown prejudice, *i.e.* , that

---

[5]     Dr. Murphy, a psychologist, indicated on post-conviction there was a
suggestion of a head injury.  P.C. O.R. vol. V. at 860.

the mitigating evidence he now points to probably would have changed the jury's sentencing determination. *See Strickland*, 466 U.S. at 695. In assessing prejudice, this court keeps in mind the strength of the State's case and the aggravating factor the jury found, along with all the mitigating evidence that might have been presented. *Walker*, 228 F.3d at 1234. Here, strong evidence, including Mr. Carter's own admissions, supported the conviction. Also, the evidence fully supported the jury's finding the avoid arrest or prosecution aggravator. *See* section VII.C., *infra*. The newly asserted mitigating evidence is partially equivocal and overall not compelling. Furthermore, on numerous occasions, this court has determined evidence of a troubled childhood does not outweigh evidence supporting the conviction and aggravating circumstances. *See Foster v. Ward*, 182 F.3d 1177, 1189 (10th Cir. 1999) (citing cases). This case is not an exception. If trial counsel had presented all of this mitigating evidence, it would have been insufficient to offset, explain, or justify the murder. *See Nguyen v. Reynolds*, 131 F.3d 1340, 1349 (10th Cir. 1997). Given the strength of the State's case, the aggravating factor found by the jury and the callous nature of the crime, we conclude the later-identified mitigating evidence, along with the mitigating evidence presented at sentencing, would not have created a reasonable probability the jury would not have sentenced Mr. Carter to death. *See Strickland*, 466 U.S. at 695.

**3. Failure to prepare second-stage witnesses.** Mr. Carter argues the witnesses did not know he had been found guilty when they testified or, further, what information about his background would be helpful. The trial transcript, however, suggests these witnesses were prepared. Each witness answered similar questions concerning future contact with Mr. Carter and his past generosity, friendliness and helpfulness toward them and others. Even if counsel's performance was deficient, the callous nature of the crime and the strong evidence supporting the aggravator make it unlikely any further witness preparation probably would have changed the result of the trial's second stage. *See id.*

**4. Failure to maintain a proper demeanor.** Throughout trial, attorney Paul Faulk told Mr. Carter jokes, inducing occasional laughter and smiling. Mr. Carter asserts he was unable emotionally to understand the inappropriateness of such behavior and counsel's explanation that he was trying to relax Mr. Carter was inexcusable. Again, we cannot consider here the juror's statement that the jury would not have sentenced him to death except for his demeanor or attitude while testifying.

During his trial testimony, Mr. Carter explained that he smiles a lot and he had been smiling occasionally during trial and laughing at the jokes Mr. Faulk had been making, but he was not laughing at the proceedings. Further, counsel

stated in closing argument that Mr. Carter was not smiling or laughing at the proceedings, and that he did not smile when on the witness stand, unless it was appropriate. We conclude the jury convicted Mr. Carter of felony murder and imposed the death penalty due to the substantial evidence supporting guilt and the aggravator and not because Mr. Carter did not maintain a proper demeanor.

## B. Ineffective assistance of appellate counsel

Mr. Carter argues the Oklahoma County Public Defender's office has an inherent conflict of interest due to its structure. Specifically, he contends direct appeal counsel failed to raise significant issues concerning trial counsel's performance, inadequacy of resources, and improprieties placed on her by her boss. The Oklahoma Court of Criminal Appeals, however, held no inherent conflict exists within the Oklahoma County Public Defender's Office when claims of ineffectiveness are raised against fellow employees. *Carter*, 936 P.2d at 345. Without discussion, the court also concluded appellate counsel was not ineffective for failing to assert on appeal ineffectiveness of trial counsel. *Id.* at 345-46. Mr. Carter has failed to demonstrate an actual conflict of interest or show that he was prejudiced by this representation. *See Chacker v. Petsock*, 713 F. Supp. 775, 785 (E.D. Pa. 1989). Further, the federal district court considered the claims of ineffective assistance of trial counsel and inadequacy of resources on their merits and correctly decided they lacked merit. Accordingly, we conclude the Oklahoma

Court of Criminal Appeals' decision was not unreasonable. *See* 28 U.S.C. § 2254(d).

## VI. Severance

Before and during trial, both co-defendants repeatedly sought severance. Mr. Carter now argues the joint trial prejudiced him because (1) the co-defendants had to share the counsel table, thereby destroying confidentiality of legal consultation; [6] (2) the jury always viewed the defendants together, subtly suggesting joint acts; (3) Mr. Summer's counsel claimed Mr. Carter's counsel was laughing at counsel table; (4) Mr. Carter was not given more peremptory challenges than Mr. Summers even though Mr. Summers was not on trial for his life; (5) evidentiary rulings stifled Mr. Carter's right to confront weaknesses in the State's theory and precluded evidence that Mr. Summers carried a gun, traded drugs, had stolen property, and had threatened a man with a gun; (6) Mr. Summers' attorney aggressively pursued the theory that the whole plan was exclusively carried out by Mr. Carter and Ms. Lewis; (7) Mr. Carter's attorney attempted to exculpate Mr. Carter by inculpating Mr. Summers; (8) Mr. Carter was unfairly prejudiced by Ms. Lewis' *de facto* immunity to present evidence against him; (9) Mr. Carter was prohibited from presenting

---

[6] The trial court denied a request for separate tables due to space concerns. Trial Tr. vol. V at 971.

stronger evidence because Mr. Summers exercised his right to remain silent; and (10) Mr. Summers did not face the death penalty.

Generally, severance is a question of state law not cognizable in federal habeas proceedings. *Fox v. Ward*, 200 F.3d 1286, 1292 (10th Cir.) (citing *Cummings v. Evans*, 161 F.3d 610, 619 (10th Cir. 1998)), *cert. denied*, 531 U.S. 938 (2000). There is no constitutional right to severance without a strong showing of prejudice caused by the joint trial. *See id.* Severance is not constitutionally required merely because defense theories conflict or because one defendant is attempting to cast blame on another. Rather, a petitioner must show "real prejudice." *Id.* at 1293. "Such . . . prejudice is shown if the defenses are truly mutually exclusive, such that the jury could not believe the core of one defense without discounting entirely the core of the other." *Id.* (quotation omitted). "'Mutually antagonistic defenses are not prejudicial *per se*.'" *Id.* (quoting *Zafiro v. United States*, 506 U.S. 534, 538 (1993)).

## A. Mutually antagonistic defenses

The Oklahoma Court of Criminal Appeals rejected Mr. Carter's argument that the co-defendants had mutually antagonistic defenses, and instead concluded both defendants denied involvement in the robbery and murder, but admitted conduct making them accessories after the fact. *Carter*, 879 P.2d at 1241-42.

> In his testimony [Mr. Carter] admitted his involvement in
> attempting to get rid of the stolen wrecker from the Auto Auction.

-25-

He testified to assisting [Mr. Summers] in repainting the truck, dismantling the winch assembly, and hiding the winch. When asked how he thought the wrecker got to [Mr. Summers'] shop, he said he thought someone had stolen it for [Mr.] Summers, he did not think [Mr.] Summers was actually at the Auto Auction. [Mr. Carter] further testified that when he assisted in the concealment of the truck he did not know that Mr. Manowski had been murdered. [Mr. Carter] in no way inculpated [Mr. Summers] in the murder . . . . Similarly . . . [Mr.] Summers did not inculpate [Mr. Carter] in the murder. In pre-trial statements to police, . . . [Mr.] Summers admitted only to towing the wrecker from his shop to the outskirts of town. He denied any knowledge of the murder or that the wrecker had been stolen from the Auto Auction. Both men attempted to exculpate themselves but not by inculpating the other.

*Id.* at 1241.

Also, the court determined that defense counsel's conduct did not create antagonistic defenses. *Id.* The court recognized the co-defendants were hostile to each other only about peripheral issues and not the crime itself: both attempted to disparage the character of the other; Mr. Carter asserted Mr. Summers had access to guns and that he sold drugs from and acquired stolen property at his body shop; Mr. Carter had a reputation for violence; and both had intimate relationships with Ms. Lewis and she was biased in favor of the other. *Id.* Further, the court determined each co-defendant's counsel argued both that the evidence linked the other co-defendant to the crime and that the evidence linked others to the crime. *Id.* at 1241-42. But, however, neither assisted the State in proving its case against the other. *Id.* at 1242. We conclude the Oklahoma Court of Criminal Appeals' determination was not unreasonable. *See* 28 U.S.C. § 2254(d).

-26-

Under the facts of this case, Mr. Carter has not shown "real prejudice" required for severance. Because Mr. Carter and Mr. Summers both denied involvement in the robbery and murder but admitted conduct that would make them accessories after the fact, their theories were not mutually antagonistic. *Cf. United States v. Rose*, 104 F.3d 1408, 1416 (1st Cir. 1997) (direct criminal appeal) (where one defendant argued he was no more than accessory after the fact and other defendant argued government did not meet burden of proof, theories were not irreconcilable). Each merely inferred that the other committed the robbery and murder.

Mr. Carter's inability to introduce evidence of Mr. Summers' "bad acts" also does not show prejudice. This irrelevant evidence did not specifically exculpate Mr. Carter or inculpate Mr. Summers.

**B.** ***Bruton v. United States***, **391 U.S. 123 (1968)**

*Bruton* held that "a defendant is deprived of his rights under the Confrontation Clause when his codefendant's incriminating confession is introduced at their joint trial," regardless of any limiting instructions given the jury. *Cruz v. New York*, 481 U.S. 186, 187-88 (1987).

The Oklahoma Court of Criminal Appeals determined Mr. Carter was not denied his constitutional right to confront his accusers by the admission of an investigating officer's testimony concerning pre-trial statements made by

-27-

Ms. Lewis and Mr. Summers. *Carter*, 879 P.2d at 1246. Because the statements did not make Mr. Summers a witness against Mr. Carter, the court concluded the statements were not the type prohibited by *Bruton*. *Carter*, 879 P.2d at 1246.

Before this court, Mr. Carter does not develop his argument that his right to confront his accusers was violated by the denial of severance. *Cf. LaFevers v. Gibson*, 182 F.3d 705, 725 (10th Cir. 1999) ("We have repeatedly warned litigants that issues adverted to in a perfunctory manner and without developed argumentation are deemed waived on appeal."). Nonetheless, from our review of the record, we conclude the Oklahoma Court of Criminal Appeals' decision was not contrary to or an unreasonable application of *Bruton*. *See* 28 U.S.C. § 2254(d)(1). The trial court refused to allow Sergeant Mullenix to testify about what Mr. Summers told him about Mr. Carter. Instead, the trial court limited testimony concerning Mr. Summer's statement to Mr. Summers knowing nothing about the homicide and wrecker, he and Mr. Carter not painting the stolen wrecker in his body shop, and Mr. Summers towing the truck. *Bruton* therefore was not implicated. *See Fox*, 200 F.2d at 1292-93.

Ms. Lewis was not herself a defendant; she was a witness, albeit reluctantly, for the State. *Bruton* therefore again was not implicated. *See Cruz*, 481 U.S. at 187-88.

-28-

## C.  Peremptory challenges

Because the co-defendants did not present mutually antagonistic or inconsistent defenses, the Oklahoma Court of Criminal Appeals held that Mr. Carter was not entitled to a full complement of nine peremptory challenges. *Carter*, 879 P.2d at 1242-43 & 1243 n.4 (citing Okla. Stat. tit. 22, § 655).  Also, the court rejected Mr. Carter's further argument that he was prejudiced by receiving fewer than nine peremptory challenges because he was facing the death penalty.  *Id.* at 1243.

Mr. Carter has not challenged the jury's partiality, [7] he cannot show his defense was mutually antagonistic to Mr. Summers' defense, and he received the peremptory challenges he was entitled to under state law.  Therefore, any constitutional challenge to the number of peremptory challenges he received fails. *See Ross v. Oklahoma*, 487 U.S. 81, 88, 89, 91 (1988);  *see also Cummings*, 161 F.3d at 619.

## D.  Second stage

Mr. Carter argues precluding evidence of Mr. Summers' "bad acts" denied the jury an opportunity to give individual consideration to Mr. Carter's

---

[7]     Mr. Carter and Mr. Summers agreed on the exercise of all peremptory challenges but the last one.  The trial court then granted an additional peremptory challenge, therefore allowing a total of ten defense peremptory challenges.  Trial Tr. vol. III at 589-90.

circumstances in deciding whether to impose the death penalty. *Lockett v. Ohio*, 438 U.S. 586 (1978) (plurality), and *Eddings v. Oklahoma*, 455 U.S. 104, 110 (1982) require "that a capital sentencer not be precluded from considering, *as a mitigating factor*, any aspect of a defendant's character or record, and any of the circumstances of the offense that the defendant proffers as a basis of a sentence less than death." *Boyd*, 179 F.3d at 921 (quotation omitted). Recognizing that, the Oklahoma Court of Criminal Appeals determined evidence of Mr. Summers' unrelated "bad acts" would not have been mitigating as to Mr. Carter's participation in the crime or his character. *Carter*, 879 P.2d at 1249 (citing Supreme Court cases). Nor did exclusion of the evidence impede the jury's consideration of all relevant facets of Mr. Carter's character. *Id.* at 1249-50. This determination was not contrary to or an unreasonable application of Supreme Court precedent. *See* 28 U.S.C. § 2254(d)(1).

## VII. Proof of Intent Element of Robbery and of Aggravating Circumstance

According to Mr. Carter, the State failed to prove beyond a reasonable doubt either the necessary intent element of the underlying felony of robbery or the necessary intent element of the murder to avoid arrest or prosecution aggravator, or both, because they are inherently contradictory.

## A. Procedural bar

On direct appeal, the Oklahoma Court of Criminal Appeals reviewed the sufficiency of the evidence to support the felony murder conviction and the aggravator independently. *See Carter*, 879 P.2d 1247-48, 1250-51. During post-conviction proceedings, Mr. Carter challenged these intent elements as contradictory as part of his ineffective assistance of appellate counsel claim. Without specifically discussing this issue, the Oklahoma Court of Criminal Appeals rejected this claim, finding Mr. Carter had failed to show either deficient performance or prejudice. *Carter*, 936 P.2d at 345-46 (citing *Strickland*). Because the state court did so, we too reach the merits.

## B. Intent element of robbery

On direct appeal, the Oklahoma Court of Criminal Appeals reviewed the sufficiency of the evidence to support the felony murder conviction under the standard set forth in *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). *See Carter*, 879 P.2d at 1247-48 (citing state law, but recognizing standard is whether, after reviewing evidence in light most favorable to State, rational trier of fact could have found existence of essential elements of crime beyond reasonable doubt). The court concluded competent evidence supported the verdict. *Id.* at 1248.

> The State presented evidence which clearly showed [Mr. Carter's] involvement in the robbery and homicide at the Oklahoma Auto Auction. [Mr. Carter] and [Mr.] Summers had talked about getting another wrecker for the body shop. [Mr. Carter] knew where a

-31-

wrecker was located at the Oklahoma Auto Auction. [Mr. Carter] was in possession of bolt cutters, having borrowed them from a friend. Two (2) .38 caliber slugs, one taken from the decedent, were found at the scene. A few months earlier, [Mr. Carter] had borrowed .38 caliber bullets from Mr. Summers' father. [Mr. Carter] admitted owning a .38 caliber handgun, but said he had gotten rid of it five (5) months prior to the murder. Boot prints, consistent with boots worn by [Mr. Carter] were found along the fence line, and near a thirty (30) inch gap in the fence. A few hours after being left at the auction yard, [Mr. Carter] was seen in possession of a wrecker taken from the Auto Auction. [Mr. Carter] subsequently admitted to two different people he had killed a man. [Mr. Carter] attempted to dispose of the truck from the auction by removing the wrecker assembly, repainting the truck and eventually burning it.

*Id.* The Oklahoma Court of Criminal Appeals reasonably concluded the jury could have found the elements of felony murder beyond a reasonable doubt. *See, e.g.*, *Hale v. Gibson*, 227 F.3d 1298, 1335 & n.17 (10th Cir. 2000) (declining to decide whether sufficiency of the evidence is a legal or factual question), *cert. denied*, 121 S. Ct. 2608 (2001).

### C. Avoid arrest or prosecution aggravator

In addressing the sufficiency of the evidence to support this aggravator, the Oklahoma Court of Criminal Appeals first cited Oklahoma law establishing that this aggravator focuses on the murderer's state of mind and requires a predicate crime separate from the murder for which the murderer seeks to avoid arrest or prosecution. *Carter*, 879 P.2d at 1250. Finding sufficient evidence, the court reasoned:

[Mr. Carter] had been fired from his job as a security officer at the Oklahoma Auto Auction approximately two (2) weeks before the murder. [Mr. Carter] knew of the existence of the wrecker at the auction, having driven it during his employment. The theft and murder were carried out during the early morning hours when the decedent was the sole person on the premises. There was no evidence of a struggle in the guard shack. The decedent was felled by one gunshot wound to the head. Soot found in the wound indicated the gun had been held next to the skin when fired. The bullet passed completely through the decedent's brain. [Mr. Carter] told both [Mr.] Denson and [Ms.] Lewis that he killed a man because he had no other choice.

Despite evidence that [Mr. Carter] had never met the decedent and had left his employment at the auction amicably, sufficient circumstantial evidence exists to support a conclusion that [Mr. Carter] killed the decedent in order to avoid identification and arrest for the theft of the wrecker. The only way in or out of the Auto Auction was through the gate situated next to the guard house . . . . The evidence supports the conclusion that in order to avoid detection when entering the Auto Auction or leaving the site with a vehicle, [Mr. Carter] had to eliminate the person in the guard shack. Ample evidence was presented to support the jury's finding that this execution-style murder was committed for the purpose of avoiding or preventing lawful arrest or prosecution.

*Id.* at 1250-51.

Based on these facts, as well as Mr. Denson's testimony that Mr. Carter told him the person who saw him steal the wrecker would not tell on him because he "offed" him, a reasonable factfinder, viewing this evidence in the light most favorable to the State, would have found beyond a reasonable doubt that Mr. Carter murdered the victim to avoid arrest or prosecution. *See Lewis v.*

-33-

*Jeffers* , 497 U.S. 764, 780-82 (1990). Thus, the Oklahoma Court of Criminal Appeals' determination was reasonable. *See, e.g.* , *Hale* , 227 F.3d at 1335 & n.17.

**D. Inconsistency of intent elements for offense and aggravator**

Mr. Carter argues that if he used the gun to take the wrecker, then the victim was dead before he left the Auction, precluding a killing to avoid arrest or prosecution. On the other hand, he argues that if he used the gun to avoid arrest or prosecution, then he could not have used it to take the wrecker and could not have committed a robbery with a firearm. In Oklahoma, however, the intent to rob and the intent to eliminate a witness can exist simultaneously and not be inconsistent. *See Spears v. State* , 900 P.2d 431, 440 (Okla. Crim. App. 1995) ("killing may precede, coincide with or follow the robbery and still be done in the commission of a robbery with a dangerous weapon"); *see also Wackerly v. State* , 12 P.3d 1, 14 (Okla. Crim. App. 2000) (robbery and murder can be contemporaneous and evidence may be sufficient to support finding murder was committed to avoid arrest or prosecution), *cert. denied* , 121 S. Ct. 1976 (2001). *See generally Estelle* , 502 U.S. at 67-68 (holding federal courts are bound by state court determinations of state law). Here, the evidence of one gunshot wound to the victim's head, the illegal entry into the Auction and the theft of the wrecker suggest that Mr. Carter intended to rob the Auction and not leave a witness. Thus, Mr. Carter used the firearm both to commit a robbery and to avoid arrest or

prosecution.  Furthermore, the instructions set forth the separate elements of felony murder and the aggravator.    *See* O.R. vol. I at 181, 182, 196.  Accordingly, there was no inherent inconsistency of the intent elements.

The judgment of the United States District Court for the Western District of Oklahoma is AFFIRMED.

Entered for the Court


Paul J. Kelly, Jr.
Circuit Judge